THE PEOPLE v. LLAUGER.

APPEAL from the District Court of San Juan.

No. 128.—Decided June 12, 1908.

CRIMINAL LAW—ASSAULT WITH INTENT TO COMMIT MANSLAUGHTER—PUNISH-
MENT—EXISTENCE OF CRIME.—The crime of assault with intent to commit
manslaughter is defined and punished by the penal laws in force in Porto Rico.

ID.—CRIME PUNISHED BY PENAL CODE.—In order to arrest and punish a person in
Porto Rico, it is necessary that he be charged with some crime defined by the
Penal Code and punished by one of the penalties enumerated in section 10 of
said Code.

ID.—CRIME UNDER THE COMMON LAW.—Crimes defined and punished under the
common law are not legally offenses brought in Porto Rico.

ID.—ATTEMPT TO COMMIT A CRIME.—Section 50 of our Penal Code provides a
punishment for the attempt to commit a crime, and assault with intent to
commit manslaughter may be properly held to be covered by that section.

ID.—ASSAULT WITH INTENT TO COMMIT A FELONY.—Section 223 of our Penal
Code punishes assault with intent to commit a felony, with the exception of
murder, and assault with intent to commit manslaughter is also included in
this section.

ID.—PUNISHMENT UNDER SECTIONS 204 AND 50 OF THE PENAL CODE.—In accord-
ance with these sections of the Penal Code, the crime of assault with intent
to commit manslaughter may be punished by imprisonment in the penitentiary
for a maximum term of five years.

ID.—PUNISHMENT IN ACCORDANCE WITH SECTION 223.—In accordance with the.
provisions of this section of the Penal Code the same crime may be punished
by a maximum term of one year imprisonment.

ID.—SHORTER TERM OF IMPRISONMENT THAN THAT AUTHORIZED BY LAW.—In the
case at bar the accused was sentenced to one year of imprisonment in jail—
that is to say, a shorter term than that authorized by sections 204 and 50 of
the Penal Code. Such facts being favorable to the accused they do not war-
rant the reversal of the judgment appealed from on that ground.

ID.—EVIDENCE AS TO PLACE OF COMMISSION OF CRIME—JUDICIAL KNOWLEDGE.—In the case at bar the *barrio* in which the crime was committed and the town of which the said *barrio* forms a part, were proved, and the court having judicial knowledge of the fact that the said town belongs to this judicial district further proof is unnecessary.

ID.—STATEMENT OF A CASE—STATEMENT MUST BE IN CONCISE NARRATIVE FORM— STENOGRAPHER'S NOTES.—The statement of the case must be a complete and exact statement of all the facts presented as evidence, expressing the testimony of each witness in concise, narrative form, but the stenographer's notes, giving the questions and answers propounded to the witnesses must not be reproduced.

ID.—INFORMATION CHARGING FELONY—VERDICT FOR MISDEMEANOR—CONVICTION OF A MINOR CRIME THOUGH INCLUDED IN THE INFORMATION.—Where a person is accused of a felony and, after being tried by a jury, is found guilty of a minor crime which, by reason of the punishment therefor, is classed as a misdemeanor, but included in the information, the proceedings cannot be held to be void nor the court deprived of its jurisdiction to continue to take cognizance of the case and render judgment in accordance with the verdict.

ID.—EVIDENCE—IRRELEVANT QUESTION—WITNESS ACCUSED OF PERJURY.—The fact that a witness was accused of perjury does not disqualify him as a witness, and a question propounded to a witness asking him whether or not he had been indicted for perjury having been eliminated, the error was corrected and it does not constitute a ground for a new trial. ·

ID.—INSTRUCTIONS TO THE JURY—OMISSIONS WITH RESPECT TO ANY POINT— FAILURE OF COUNSEL TO ASK FOR INSTRUCTIONS.—Where the instructions of the trial court to the jury are assailed, not because they are erroneous, but because they are incomplete and omit certain points, counsel must have expressly asked the court to instruct the jury upon the particular points omitted, in order that such an omission will be regarded as a material error.

The facts are stated in the opinion.

*Messrs. Sweet, Rossy & Campillo* for appellant.

*Mr. Rossy, fiscal,* for respondent.

MR. JUSTICE MACLEARY delivered the opinion of the court:

The defendant in this case, Manuel Llauger, was prosecuted in the District Court of San Juan for assault with intent to commit manslaughter. The jury convicted him of an aggravated assault, and he was sentenced by the court to be punished by confinement for one year in the district jail at hard labor. From this judgment he took an appeal to this court; and the case was duly heard, on oral argument and briefs of counsel, on the 24th of April, and taken under advisement by the court. It appears from the record that, prior to passing sentence upon the defendant, in the trial court, his

counsel made a motion for a new trial, on the ground that the verdict was contrary to the evidence, and that the court had erred in its charge to the jury. This motion was overruled by the trial court, and from this order overruling the motion for a new trial an appeal was also duly taken to this court, and heard in connection with the appeal taken from the judgment, on the same record.

Appellant's counsel seeks a reversal of the judgment of the trial on five grounds:

"1st. That the information on which the prosecution was based, charging the defendant with an assault with intent to commit manslaughter, is null and void, there being no such offense as that charged known to the law of Porto Rico.

"2nd. That the venue of the offense was not proven as required by law.

"3rd. That the verdict of the jury was null and void, because the jury had no authority to render a verdict for a misdemeanor.

"4th. That the question to the witness, Donato, propounded by the *fiscal,* as to whether or not he had been indicted for perjury was improper; and that, although it was ruled out by the court and the jury were instructed to disregard it, the case of the accused was prejudiced thereby.

"5th. That the court failed, in various particulars, in giving its instructions to the jury, in not commenting upon the evidence, and in other matters."

The first question presented for our consideration, as to the nonexistance of such a crime as assault with intent to commit manslaughter, has been decided, by this court, since the submission of the case at bar; and it might suffice to refer to the opinion of the court, rendered by Mr. Justice Hernández, in the case of *The People of Porto Rico* v. *Dumas* on the 29th of April, in which it is held, after thorough argument and consideration, that a verdict of the jury finding

the defendant guilty of assault with intent to commit manslaughter is valid, and that such a, crime is sufficiently provided for and punished by the laws' of this Island. This opinion meets our entire approbation, but owing to the importance of the question presented and the opinion of the trial court, rendered in another case, and contained in appellant's brief, we will make a further examination of the matter.

The information in this case charges that the defendant "made an assault, with a revolver, upon Miguel Flores, with the intent to commit manslaughter, by discharging it upon the person of the said Flores and wounding him in the head." Thus the mooted question arises directly in this case upon the face of the information itself.

It is enacted, in the fifth section of our Penal Code, that "no person shall be arrested for any crime or offense unless such crime or offense is expressly declared in this Code," with certain exceptions not relating to the case at bar. And again, in section 10 of the same Code, we find the following definition: "A crime or public offense is an act committed or omitted in violation of a law forbidding or commanding it, and to which is annexed, upon conviction, either of the following punishments," enumerating them.

Then it may be held that in order to arrest and punish any person in Porto Rico he must be charged with some crime or offense, declared to be such in the Penal Code, and to which some one of the five punishments enumerated in section 10 has been affixed. There are, of course, no common-law offenses known to the courts of this Island. Unless some sufficient designation of the offense charged in the information is found in the Codes of Porto Rico it must be held to be ineffective, and the defendant should be discharged.

A similar provision exists in the laws of Texas and in many other states of the American Union, and it is certainly wise and worthy of the spirit of a free people.

Let us examine the three sections of our Penal Code which are relied on as "declaring" or designating the crime and affixing the punishment thereto. They are the following:

Section 218.—"Every person who assaults another with intent to commit murder, is punishable by imprisonment in the penitentiary not less than one year nor more than 15 years."

Section 222.—"Every person who assaults another with intent to commit rape, the infamous crime against nature, mayhem, robbery, or grand larceny, is punishable by imprisonment in the penitentiary not less than one year nor more than 14 years."

Section 223.—"Every person who is guilty of an assault, with intent to commit any felony, except an assault with intent to commit murder, the punishment for which assault is not prescribed by the preceding section, is punishable by imprisonment in the penitentiary not exceeding one year, or by fine not exceeding $500, or by both." (See Revised Statutes of Porto Rico, pp. 524-525.)

These sections are identical with sections 217, 220 and 221 of the Penal Code of California; and we may seek in the decisions made by the Supreme Court of that State some light on the question under discussion. But we have been unable to find any case in California in which the defendant has been convicted of assault with intent to commit manslaughter. Under an indictment, in that State, for assault with intent to murder, the accused may be convicted of the crime charged, or of assault with intent to do bodily harm, or of a simple assault. (*People* v. *Fine,* 53 Cal., 263.) To the same effect are the decisions of the Courts of Texas. (*Lockwood* v. *State,* 1 Tex. App., 751; *Sheffield v. State,* 1 Tex. App., 642; *Wilson* v. *State,* 25 Tex., 171; *State* v. *Long,* 34 Tex., 568; *Loyd* v. *The State,* 46 Tex. Crim. Rep., 534; *Thomas* v. *The State,* 44 Tex. Crim. Rep., 346.)

Let us examine a little more closely some other sections of our Penal Code which bear upon the matter under discussion.

Section 50 of our Penal Code provides a punishment for the attempt to commit a crime which fails, and this section,

as well as section 223, may properly be held to cover an assault with intent to commit manslaughter. Under section 204 of the Penal Code and paragraph one of section 50, cited, the punishment of the frustrated attempt to commit manslaughter would be imprisonment in the penitentiary not exceeding five years. The maximum imprisonment which could be imposed under section 223 for assault with intent to commit a felony, such as indicated, is one year. The defendant in this case was sentenced, under the last-named section, to one year in jail at hard labor. No complaint is made of his sentence being to the jail instead of to the penitentiary, and as this may be regarded as a mitigation favorable to the convict, it will not be disturbed. The imposition of a shorter term of imprisonment than that authorized by the statute will not justify the reversal of a judgment of conviction on an appeal taken by the defendant. (*People* v. *Oliver,* 95 Pac. Rep., 172; *Reed Ex parte,* 143 Cal., 634; *People* v. *Muhlner,* 115 Cal., 303. Section 44 Penal Code of Porto Rico.)

There can be no doubt that manslaughter is a felony, since the punishment affixed to the crime, by section 204 of our Penal Code, is imprisonment in the penitentiary for a term not exceeding 10 years. Crimes are divided into felonies and misdemeanors according to the penalties affixed thereto. Sections 13 and 14, Penal Code.

Then, since it is not included in section 222 of the Penal Code, an assault with intent to commit this felony, manslaughter, is clearly punishable under section 223 of said Code. It appears to us that such a conclusion is the logical and inevitable result from a simple comparison of these several sections of the Penal Code and a slight exercise of the ordinary powers of reason.

It may be said, so far as our research has extended, that the Supreme Court of California has neither affirmed nor denied the existence of such a crime as assault with intent to commit manslaughter, and perhaps for the reason that the question has never been directly presented to that high

court. Then we must decide this question without that as-sistance on which we have so often confidently relied. In that treasury of legal precedents known as the "Cyclopedia of Law and Procedure" we find it stated:

"At common law there is no such offense as assault with intent merely to kill or commit manslaughter. But by statute in many juris-dictions it is made a distinct offense to commit an assault with intent to kill or with intent to commit manslaughter, or murder in the second degree. Under a statute punishing an assault with intent to commit any felony, there may be an indictment for assault with intent to com-mit manslaughter." (21 Cyc., 787, 788.)

The State of Iowa has a statute in language very similar to, if not identical with, section 223 of our Penal Code; and under that statute it has been held, by the Supreme Court of that State, that an assault with intent to commit manslaghter is an indictable felony. (See *State* v. *White,* 45 Iowa, 325; *State* v. *McGuire,* 87 Iowa, 142; 54 N. W., 202; *State* v. *Stone,* 88 Iowa, 724; 35 N. W., 6.) To the same effect are the deci-sions of the Supreme Court of Indiana, of Missouri and of Mississippi. (*State* v. *Throckmorton,* 53 Ind., 354; *State* v. *Johnson,* 4 Mo., 618; *Morgan* v. *State,* 24 Miss., 54.)

It is contended that the intent which must exist in the crime charged in this information is the same as the malice which is an essential ingredient in the crime of murder. It is insisted that it is a psycological impossibility for the human mind to form an intent to assault a fellow being, intending to take his life, and not at the same time conceive the intent to commit murder. Or, in other words, that there can be no intent to take life, if the object of the assault was merely manslaughter, or that the crime of manslaughter excludes the intent to kill. But we can entertain no doubt of the possibil-ity of a person intentionally and unlawfully, though without malice, taking the life of a human being. If a human life were thus taken the crime would not be murder but only man-slaughter. There need not be in the crime of manslaughter an

intent to take life, but such an intent may, at the moment of the fatal act, exist in the mind of the perpetrator, and when the defendant has made an assault with such an intent and fails to accomplish his purpose, in the absence of malice, the crime is reduced to an assault with intent to commit manslaugter, such as is properly charged in this information. It seems to us that the confusion which has prevailed among certain persons, concerning the existence of the crime of assault with intent to commit manslaughter, arises from a misconception of the meanings of the words malice and intention, respectively.

These words are defined by Bouvier, in his excellent dictionary revised by Rawle, as follows:

*"Intention.*—A design, resolve or determination of the mind." (1 Bouvier Law Dict., 1087.)

*"Malice.*—The doing a wrongful act intentionally without just cause or excuse. A wicked and mischievous purpose which characterizes the perpretation of an injurious act without lawful excuse." (2 Bouvier Law Dict., 295.)

The word *intention* is not expressly defined in our Penal Code, but, in paragraph 14 of section 559, it is enacted that "words and phrases must be construed according to the context and the approved usage of the language," which certainly may be ascertained from works of acknowledged authority like the dictionary above cited. The fourth paragraph of this same section declares that the words "malice" and "maliciously" import the doing of a wrongful act, intentionally, without just cause or excuse, a conscious violation of the law to the prejudice of another. Then the intention to kill may clearly exist without malice, although malice must include the intention, as clearly appears from these and other definitions.

The difference between murder and manslaughter is well defined in the textbooks and the decisions of the courts as well as in our statutes. We will quote two sections from our

Penal Code which clearly draw the distinction between the two crimes. They are as follows:

"Section 199.—Murder is the unlawful killing of a human being with malice aforethought."

"Section 203.—Manslaughter is the unlawful killing of a human being without malice."

Both crimes consist in the unlawful killing of a human being; murder is done "with malice aforethought" and manslaughter "without malice." The intention to do the forbidden act must exist in both cases; for without the criminal intent there can be no crime. (Penal Code, sec. 11.) It is the existence of malice, on the one hand, and the absence of it on the other, in the act of killing, which plaves the offense in the one category or the other. Then if the principal crimes are so readily distinguished, why cannot the subordinate offenses of an assault with intent to commit the one or the other be likewise readily recognized. On making a close and logical analysis of the question it seems to us that all difficulties vanish from the matter.

That eminent text-writer, Joel Prentiss Bishop, is clearly of the opinion that such a crime as that denounced in the information presented, for our consideration, exists, and is punishable under the law. In his excellent work on criminal law he says:

"If one assaults another meaning to take his life, the intent is in law to commit murder, or to commit manslaughter, according as the killing would be the one or the other if effected; and it is neither if, under the corcumstances, it would not be an offense. To illustrate, if a man to prevent being arrested intentionally kills an officer having a proper warrant, he commits murder; or if the assault which was meant to kill fails, he commits assault with intent to murder. Yet he may not know whether the officer has a warrant or not, and therefore whether he is himself endeavoring to perpretate murder or manslaughter. But, if the officer, where a warrant is required, has none, then the offense of the man who meant to kill him and failed will be

assault with intent to commit manslaughter. He cannot be convicted of assault with intent to murder.'' (Bishop's New Criminal Law, p. 444, sec. 736, par. 4.)

In McClain's work on criminal law, cases of manslaughter are divided into three classes: (1) Where there is an intent to take life, and the killing would be murder but for mitigating circumstances; (2) where death results from unintentionally doing an unlawful act; (3) where death results from the negligent performance or omission of an act which, though not in itself wrongful, was attended by circumstances which endangered life. (1 McClain Cr. Law, sec. 335.)

In cases where the death of the person assaulted does not result, but the crime would have fallen under the first class had the killing been consummated, it clearly appears that the aggressor would be guilty of an assault with intent to commit manslaughter. It is from an exclusive consideration of the second and third classes of cases that the conclusion arises that there can be no such offense as assault with intent to commit manslaughter, for want of the homicidal intent. If the classification made by the learned writer referred to is correct, as we think it is, there can be no question of the existence of a crime such as that set out in the information presented in this case.

More than 30 years ago the Supreme Court of California in a well considered opinion, written by Mr. Justice Niles, draws the following distinction, between murder and manslaughter:

''Whether the homicide amounts to murder or to manslaughter merely, does not depend upon the presence or absence of the intent to kill. In either case there may be a present intention to kill at the moment of the commission of the act. But when the mortal blow is struck in the heat of passion, excited by a quarrel, sudden, and of sufficient violence to amount to adequate provocation, the law, out of forbearance for the weakness of human nature, will disregard the actual intent and will reduce the offense to manslaughter. In such case, although the intent to kill exists, it is not that deliberate and

malicious intent which is an essential element in the crime of murder." (*People* v. *Freel*, 48 Cal., 437.)

This paragraph is cited with approval in the later case of *The People* v. *Crowey*, 56 Cal., pages 42-43. Applying this same doctrine to assaults considered with reference to the intent with which they are committed it would certainly appear that the same learned court would inevitably arrive at the conclusion that an assault with the intent to commit manslaughter could be charged and punished under the penal laws of California.

We certainly think that the same distinction applies in assaults which have for their object and result the commission of murder, or manslaughter, respectively, and which failed in their purpose through some intervening cause not originating with the aggressor. Then although the authorities, found in judicial decisions, may be somewhat conflicting, we clearly conceive that the force of logical reasoning, especially under statutes such as ours, is in favor of the position that we have taken, and that the crime, charged in the information in this case, exists in Porto Rico and is punishable under existing statutes.

In regard to the venue in the case being proven, the court judicially knows that the ward of Espinosa and the town of Vega Alta are within the territorial jurisdiction of the District Court of San Juan, and that the court below, as far as venue is concerned, has jurisdiction to try this case.

Although the district attorney is required to prove all the essential facts set out in the information, still he can take advantage of such facts as the court judicially knows, under section 36 of the Law of Evidence (See Laws of 1905, p. 76); one of which is the statutes of this Island establishing the boundaries of judicial districts in Porto Rico.

The evidence adduced on the trial shows that the offense was committed in the ward of Espinosa, and in the town of Vega Alta, at a cockfight, which took place there on the 30th

of December, 1906. This is all the evidence that is required in regard to proving the venue. However, we may remark in passing that the statement of the case, which is found in the record, was not made in compliance with rule 17 of the District Court, which requires that such a statement shall ·contain a full and complete narration of all the facts presented as proof at the trial of the defendant, expressing the testimony of each witness in *concise, narrative* form, and also including a copy of such documents as are presented in evidence. The statement in this record simply contains a copy of the stenographer's notes, giving the questions and answers propounded to each witness, and does not conform to rule 17 of the district court, nor to the decisions of this court which have been heretofore rendered. Repeatedly we have declared that the stenographer's notes should not appear in the record presented here, but are only intended to guide and assist the trial court and counsel in preparing the statement to become a part of the record for our consideration. Reference may be made to opinions directing how such statements should be prepared, in the following cases, to wit: *López* v. *American Railroad Co.,* 3 Dec. P. R., 391; *Rodríguez de los Albas* v. *Jiménez,* 3 Dec. P. R., 282; *García* v. *Canada,* 3 Dec. P. R., 524; *Barnes et al.* v. *P. R. R.,* 12 P. R. Rep., p. 76; *Cepeda* v. *Acosta,* 13 P. R. Rep., p. —; and many others approving those cited. See also Code of Civil Procedure, sections 216, 299, 300, 301 and 302; and 3 Estee's Pleadings, chap. 3.

It is to be regretted that members of the bar do not consult the decisions of the Supreme Court, in matters of practice, and endeavor to follow them; and that district judges continually approve statements that do not conform to the statutes, nor to the rules of this court nor of their own courts.

The objection made by the accused to the verdict of the jury, because it was rendered finding the defendant guilty of a misdemeanor, is not sustained on principle nor authority. The defendant was indicted for a felony, but it was such a

felony as included within it certain misdemeanors under the statutes of Porto Rico, and the jury, after considering all the evidence and the charge of the court, could find the defendant not guilty of the felony, but guilty of one of the misdemeanors, which are included therein and they are not deprived of their functions by the facts proven which require them to do so.

It has been held in California that where a defendant is convicted of an offense of a lesser grade than that charged in the indictment, the former being included in the latter, the same judgment should be entered on the verdict as if the defendant had been indicted for the lesser offense of which he was convicted. This principle supports the proposition which we have just announced.

*People* v. *Gordon*, 99 Cal., 227; *People* v. *McFadden*, 65 Cal., 445; *People* v. *Pape*, 66 Cal., 366; *People* v. *Helbing*, 61 Cal., 620; *People* v. *English*, 30 Cal., 215.

The fact that the statute laws of Porto Rico do not provide for juries in misdemeanor cases does not prevent the jury from finding the defendant guilty of a misdemeanor, when the court has acquired jurisdiction of his case, and at his request, selected a jury and caused it to be empanelled and sworn to try his case. If it turns out in the proof that he is not guilty of the felony, but only of a misdemeanor, included in the felony charged against him, there is no reason why the court should relinquish its jurisdiction of the case, and send it to another court to be tried, for the law authorizes the trial to proceed, and provides that the defendant may be found guilty of the minor offense or acquitted according to the evidence. Such was the procedure followed in this case. (See sec. 284 and 286 of the Code of Criminal Procedure.) Section 286 of our Code of Criminal Procedure is identical with section 1159 of the Penal Code of California; and in construing the statute of Porto Rico we may follow the decisions of the California courts rendered prior to March 1, 1902, the date when our Code was approved. (See *People of Porto Rico* v. *Kent*, 10 P. R. Rep., p. 325, and cases there cited.)

Hence we may follow, in this matter, the cases from California heretofore cited. The jurisdiction of the court having once attached by the presentation of the information, and the jury having been properly and legally summoned, empanelled and sworn, the case must proceed to judgment. The procedure folowed in this case was proper and in conformity with law, and is approved.

The question propounded to the witness Donato, although it was overruled by the court, and properly so, did not prevent the defendant from having a fair trial. It is true that the mere fact that the defendant was indicted, or was under a charge of perjury, did not render him, prior to conviction, disqualified as a witness; but the court ruled out the question propounded by the *fiscal* and instructed the jury to disregard it. It is said by counsel that the court could not efface from the minds of the jury the impression already made that this witness was under a cloud; this may be so, but nevertheless, this error of counsel in propounding an improper question, which was overruled by the court, and such error thereby corrected, does not necessitate a new trial. If the court did not charge sufficiently in regard to the matter, the attorney for the accused could have asked for instructions on that point, which, if properly drawn and opportunely offered, would no doubt have been given to the jury. (Code of Crim. Pro., sec. 266.)

The same may be said in regard to the fifth point, on which counsel for the accused rely for a reversal of the judgment. Various exceptions are taken to the charge of the court because of deficiencies, and not because of any erroneous matter contained therein. Section 266 of the Code of Criminal Procedure authorizes defendant's counsel to submit instructions to the court explaining or amplifying any points which are not already covered in the principal charge, and unless defendant's counsel do this they have no right to complain of the failure of the court to give proper instruc-

tions to the jury. Section 266 of our Code of Criminal Procedure is almost identical with section 1127 of the Penal Code of California, and, as stated above, we are justified in looking to the Supreme Court of that State for a proper interpretation of the same. This is easily found. It is said by that high tribunal that the defendant cannot complain of the failure of the trial court to instruct the jury upon a particular point if he fails to ask an instruction thereupon; and that the failure of the court, in a criminal prosecution, to instruct the jury upon any proposition deemed essential by the defendant is not error, where no request has been made for such an instruction. (*People* v. *Fice,* 97 Cal., 459; *People* v. *Ah Wee,* 48 Cal., 236; *People* v. *Haun,* 44 Cal.; 96.)

It is the duty of counsel, both for the State and the accused, to aid the trial court in every possible way to secure for the defendant a fair trial, and for the State a complete presentation of the information properly filed against the accused. If counsel on either side fail in this duty errors arising from such failure cannot be made the basis of a motion, in behalf of the party represented, for a new trial.

From all that appears in the record, the defendant has had the benefit of a fair and impartial trial, and no material error has been committed in the progress thereof, and the verdict of the jury and the judgment of the court are amply supported both by the law and the facts, and for this reason we are of opinion that the judgment of the court below, rendered against this defendant on the 10th day of May, 1907, should be in all things affirmed.

*Affirmed.*

Chief Justice Quiñones and Justices Hernández, Figueras and Wolf concurred.